# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DOCTORS OXYGEN SERVICE INC., d/b/a MEDGAS SOLUTIONS<br><br>       Plaintiff,<br>v.<br><br>CANNON MANAGEMENT GROUP, LLC, and THOMAS R. CANNON,<br><br>       Defendants. | Case No. 14-CV-766-JPS<br><br><br><br><br>ORDER |

    The plaintiff, which does business under the name Medgas Solutions (hereinafter "Medgas"), filed this case on July 2, 2014. (Docket #1). Medgas alleged that the defendants—Cannon Management Group, LLC, and Thomas R. Cannon (hereinafter "the defendants")[1]—accepted a construction contact to perform work at the Jesse Brown V.A. Medical Center in Chicago, Illinois. (Docket #1, ¶ 8). The defendants, in turn, entered into a subcontract with Medgas. (Docket #1, ¶ 9). Under that subcontract, Medgas agreed to install and provide various pieces of equipment; Medgas was to receive $100,000.00 for performance of this work. (Docket #1, ¶¶ 11–12). Medgas performed much of this work in Chicago at the V.A. center and requested payment from the defendants. (Docket #1, ¶¶ 14, 18). The defendants, however, never paid Medgas any of the money owing. (Docket #1, ¶¶ 16–17, 19).

    Thus, Medgas filed this action, alleging breach of contract and theft by contractor claims. (Docket #1, ¶¶ 20–29). Medgas served a copy of the

---

[1] The original complaint did not name Cannon as an individual defendant. Medgas named Cannon in its amended complaint. (Docket #10). This, however, makes little difference to the Court's discussion of the background of the case.

complaint upon the defendants. (Docket #4). After the defendants failed to timely respond, Medgas requested entry of default. (Docket #6). The matter, which had originally been assigned to a magistrate judge, was then transferred to this Court for entry of default judgment. Upon receiving the case, the Court immediately identified a pleading issue in Medgas' complaint and directed Medgas to file and serve an amended complaint. (Docket #8). Medgas complied with both directives. (Docket #10, #11, #12). After the defendants again failed to answer, Medgas moved for default judgment. (Docket #13, #14, #15).

This time, the Court identified issues with Medgas' damages request and, thus, held the motion for default judgment in abeyance pending an additional submission from Medgas. (Docket #16). Medgas submitted the required additional materials on December 12, 2014.

Finally, the Court entered default judgment on December 17, 2014. (Docket #18, #19). The Court awarded Medgas a total of $246,465.88. (Docket #18, #19).

Obviously, that default judgment carried the salutary effect of securing the defendants' attention because on February 6, 2015, the defendants appeared for the first time and moved to vacate entry of the default judgment and dismiss the case for lack of personal jurisdiction. (Docket #22). That motion is fully briefed and now before the Court for decision. (Docket #23, #26, #30).

1. STANDARD OF REVIEW

"When a district court enters a default judgment without personal jurisdiction over the defendant, 'the judgment is void and it is a per se abuse of discretion to deny a motion to vacate that judgment.'" *be2 LLC v. Ivanov*, 642 F.3d 555, 557–58 (7th Cir. 2011) (quoting *Relational, LLC v. Hodges*, 627

F.3d 668, 671 (7th Cir. 2010); citing *Jenkins & Gilchrist v. Groia & Co.*, 542 F.3d 114, 118 (5th Cir. 2008); *Blaney v. West*, 209 F.3d 1027, 1031 (7th Cir. 2000); *United States v. Indoor Cultivation Equipment from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1316–17 (7th Cir. 1995)). Thus, in this case, the Court must vacate its judgment if it does not have personal jurisdiction over the defendants.

The Court, sitting in Wisconsin, may exercise personal jurisdiction over the defendants "only if authorized both by [Wisconsin] law and the United States constitution." *be2 LLC*, 642 F.3d at 558 (citing Fed. R. Civ. P. 4(k)(1)(A); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)). This is technically a two-part analysis: the Court must determine whether Wisconsin's state courts would have jurisdiction under the state's long-arm statute, Wis. Stat. § 801.05, and whether personal jurisdiction would comport with principles of due process. *See Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). But Wisconsin's long-arm statute is liberally construed in favor of conferring jurisdiction to the maximum extent allowable under principles of due process. *See, e.g.*, *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012); *Kopke v. A. Hartrodt S.R.L.*, 2001 WL 99, ¶ 10, 245 Wis. 2d 396, 629 N.W.2d 662; *Fabio v. Diversified Consultants, Inc.*, No. 13-CV-524, 2014 WL 713104 at *2 (W.D. Wis. Feb. 25, 2014). So the Court can easily collapse the personal jurisdiction issue into one question: whether personal jurisdiction over the defendants comports with principles of due process.

The exercise of personal jurisdiction comports with principles of due process when one of two separate jurisdictional standards is satisfied: specific jurisdiction or general jurisdiction. *See, e.g.*, *Daimler AG v. Bauman*, --- U.S. ----, 134 S.Ct. 746, 754 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ----, 131 S.Ct. 2846 (2011) (citing *Helicopteros Nacionales de Colombia, S.A.*

*v. Hall*, 466 U.S. 408, 414, ns. 8, 9 (1984)). In this case, Medgas does not argue that the general jurisdiction standard is satisfied, so the Court focuses on specific jurisdiction.

In *International Shoe*, the Supreme Court set forth the framework of specific jurisdiction. *See Daimler AG*, 134 S.Ct. at 754 (describing specific jurisdiction as being "represented by *International Shoe* itself") (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). In *International Shoe*, "the in-state activities of the…defendant 'ha[d] not only been continuous and systematic, but also g[a]ve rise to the liabilities sued on.'" *Daimler AG*, 134 S.Ct. at 754 (quoting *Int'l Shoe*, 326 U.S. at 317). *International Shoe* also noted that "'the commission of some single or occasional acts of the corporate agent in a state' may sometimes be enough to subject the corporation to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity." *Daimler AG*, 134 S.Ct. at 754 (quoting *Int'l Shoe*, 326 U.S. at 318). In other words, to comply with *International Shoe*'s conception of "fair play and substantial justice," the suit must "aris[e] out of or relate[] to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414, n.8 (citing Von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1144–64 (1966)).

Importantly, not all contacts with a forum state weigh in favor of specific jurisdiction; rather,

> [t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation. Crucially, not just any contacts will do: "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." Furthermore, the relation

> between the defendant and the forum "must arise out of contacts that the defendant *himself* creates with the forum...." Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement.

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), *as corrected* (May 12, 2014) (quoting *Walden v. Fiore*, --- U.S. ----, 134 S.Ct. 1115 (2014); citing *Int'l Shoe*, 326 U.S. 310; *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Court must remember that the "'minimum contacts' analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S.Ct. at 1123 (quoting *Int'l Shoe*, 326 U.S. at 319). The "mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 134 S.Ct. at 1126.

In *Felland*, the Seventh Circuit distilled the specific jurisdiction inquiry into a three-part test, requiring: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." 682 F.3d at 673 (citing *Burger King*, 471 U.S. at 472; *Int'l Shoe*, 326 U.S. at 316; *Tamburo*, 601 F.3d at 702; *Purdue*, 338 F.3d at 780–81). As to the first of those parts, the Seventh Circuit clarified that the nature of the plaintiff's claim is extremely important to determining purposeful availment:

> We note at the outset that the nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue. For example, personal jurisdiction in a breach-of-contract suit generally turns on whether the defendant purposefully availed himself of the privilege of

> conducting business in the forum state. So if Felland had brought only a breach-of-contract claim, the analysis would likely be limited to Clifton's conduct during contract formation in Mexico. Clifton never advertised in Wisconsin, nor did he or any of his associates conduct any actual business there, so the exercise of personal jurisdiction would probably not be appropriate had Felland brought only a breach-of-contract claim.

*Felland*, 682 F.3d at 674 (citing *Tamburo*, 601 F.3d at 702; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) ("[I]n a breach of contract case, it is only the 'dealings between the parties in regard to the disputed contract' that are relevant to minimum contacts analysis."); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008); *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996)). It is only when a defendant "purposefully direct[s] activities at the forum state or purposefully avail[s] himself of the privilege of conducting business in the state," that the defendant can be required to litigate in the forum. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014).

Because the parties wish to proceed on their written submissions (and because there do not appear to be any disagreements over the facts), an evidentiary hearing is unnecessary. *See Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, No. 14-2527, slip op. at 3 (7th Cir. Apr. 15, 2015). Because the defendants defaulted, they bear the burden of proving that the Court lacks jurisdiction. *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857 (7th Cir. 2011) (citing *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986)). This contrasts with the general rule that, where the defendant challenges personal jurisdiction and the parties proceed on their written submissions, "the plaintiff must establish merely a *prima facie* case of personal jurisdiction." *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, No. 14-2527, slip

op. (7th Cir. Apr. 15, 2015) (citing *Purdue*, 338 F.3d at 782). Under either formulation—even with the defendants bearing the burden—the defendants prevail.

2. ANALYSIS

Medgas argues that this Court may exercise specific jurisdiction over the defendants in Wisconsin because of the defendants' contacts: (1) the defendants solicited Medgas, which is located in Wisconsin, via email and phone to perform the work in question (*see* Docket #27, ¶ 3); (2) while ultimately the work was performed in Illinois, Medgas *prepared* in Wisconsin (*see* Docket #27, ¶ 5); and, (3) the defendants continued to contact Medgas in Wisconsin by email and phone during the preparation and performance period (*see* Docket #27, ¶¶ 4, 6). The Court will accept these representations as true. *See Felland*, 682 F.3d at 672 (citing *Purdue*, 338 F.3d at 782). Meanwhile, Medgas has asserted two basic claims: breach of contract and theft by contractor. (*See* Docket #10, ¶¶ 21–33).

In light of the legal authority cited above, the Court must ask whether the defendants' contacts constitute in-state activity related to the Medgas' claims. *See Daimler AG*, 134 S.Ct. at 754 (quoting *Int'l Shoe*, 326 U.S. at 318); *Felland*, 682 F.3d at 674. They do not.

2.1 Purposeful Availment

None of the defendants' contacts satisfy the first prong of *Felland*, purposeful availment.

As to the first group of alleged contacts, nothing about the solicitation or formation of the contract establishes purposeful availment. Certainly, the contract, alone, is not enough to support personal jurisdiction. *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum

contacts in the other party's home forum, we believe the answer clearly is that it cannot."). And, even though the defendants knew that Medgas was based in Wisconsin and solicited their business, that is not sufficient to establish specific jurisdiction.[2] *See Darwin Chambers Co., L.L.C. v. Bennington Coll. Corp.*, No. 14-CV-1925, 2015 WL 1475009, at *8–*9 (E.D. Mo. Mar. 31, 2015) ("Assuming that Bennington solicited the parties' agreement knowing that Darwin was a Missouri corporation, 'that knowledge cannot create minimum contacts with [Missouri] because the plaintiff cannot be the only link between the defendant and the forum.'") (internal quote of *Walden* omitted) (quoting *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816 (8th Cir. 2014); *Walden*, 134 S.Ct. at 1125); *Nimbus Data Sys., Inc. v. Modus LLC*, No. 14-CV-4192, 2014 WL 7387200, at *5 (N.D. Cal. Dec. 29, 2014) ("the fact that a defendant has solicited a contract and communicated with the plaintiff in the forum state by email and telephone is also insufficient to establish purposeful availment") (citing *Azzarello v. Navagility, LLC*, No. 08–CV–2371, 2008 WL 4614667, at *3–*5 (N.D.Cal. Oct. 16, 2008); *Evergreen Media Holdings, LLC v. Safran Co.*, No. CIV.A. H-14-1634, 2014 WL 7272292, at *13 (S.D. Tex. Dec. 18, 2014) (citing *Colwell Realty Investments, Inc. v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1334 (5th Cir.1986); *Stuart v. Spademan*, 772 F.2d 1185, 1192–93 (5th Cir. 1985)). The same is true of communications between the parties. *Darwin Chambers*, 2015 WL 1475009, at *8–*9 (citing *Dairy Farmers of America, Inc. v. Bassett & Walker Inter., Inc.*, 702 F.3d 472, 478 (8th Cir. 2012));

---

[2]Medgas cites *Madison Consulting Group v. State of S.C.*, 752 F.3d 1193, 1203 (7th Cir. 1985) for the proposition that active solicitation establishes sufficient contacts. But the defendant's solicitation efforts in *Madison Consulting* were more active, involving inducing the plaintiff to travel to the defendant's state at plaintiff's expense. *Id.* Moreover, *Madison Consulting* was decided before *Walden* and *Burger King*.

*Nimbus*, 2014 WL 7387200, at *5 (citing *Azzarello*, 2008 WL4614667, at *3); *Evergreen*, 2014 WL 7272292, at *13 (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)). The formation of the contract, itself, does not appear to have occurred in Wisconsin. Indeed, it appears that the defendants actually signed the contract in Chicago. (Docket #27, Ex. 2 at 14–15 (February 7, 2013, revised contract was mailed to defendants in Chicago and included an acceptance line for signature)). And the contract does not call for any work to be done in Wisconsin. Thus, under *Burger King*, there does not appear to be any purposeful availment on the basis of the contract. *E.g. Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (in determining personal availment, courts should look to ongoing obligations or commitments with the forum that were created by the contract) (citing *Burger King*, 471 U.S. at 478).

As to the second group of contacts, the fact that Medgas performed preparatory work in Wisconsin was purely unilateral on Medgas' part and does not affect the contacts analysis.³ *E.g. Walden*, 134 S.Ct. at 1122–23.

Finally, as to the third group of contacts, any ongoing communications and dealings between the defendants and Medgas were extremely limited. The fact that the defendants contacted Medgas in Wisconsin is purely a function of Medgas' location there; this does not establish contacts with the forum state, itself. *Walden*, 134 S.Ct. at 1122 (citing *Int'l Shoe*, 326 U.S. at 319; *Hanson*, 357 U.S. at 251). *Accord Advanced Tactical*, 751 F.3d at 801 (quoting *Walden*, 134 S.Ct. at 1122). Additionally, it appears that the defendants were

---

³This also distinguishes the case from *Citadel Group Ltd v. Washington Regional Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008), in which the preparatory work was a focus of the contract.

called upon to sign any change forms from their location in Illinois. (Docket #27, Ex. 4 (change forms all lack signature from defendants' representative)).

Thus, put as simply as possible, while the defendants might have had some limited interaction with Medgas while Medgas was in Wisconsin, there is no indication that the defendants ever availed themselves of *conducting business* in Wisconsin. The Court may look to "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' in determining whether there were sufficient minimum contacts." *Citadel Group*, 536 F.3d at 761 (quoting *Burger King*, 741 U.S. at 479). In this case, the prior negotiations were very limited—with the defendants participating practically entirely from Illinois—and the subject of the contract was to occur in Illinois.

### 2.2    Injury Arising Out of Relevant Contacts

The Court's rejection of Medgas' purposeful availment argument is sufficient to dismiss this case for lack of personal jurisdiction. *See Felland*, 682 F.3d at 673 (listing three-part jurisdiction test in conjunctive). However, the Court is mindful of the fact that the Supreme Court has been refining its personal jurisdiction jurisprudence within the last few years. *See, e.g.*, *Walden*, 134 S.Ct. 1115; *Daimler AG*, 134 S.Ct. 746; *Goodyear*, 131 S.Ct. 2846. In light of those recent developments, the Seventh Circuit has had limited opportunity to apply the recent law. Thus, the Court finds it wise to analyze the remaining *Felland* requirements, if for no other reason than to confirm the necessity of dismissing this case.

The second *Felland* requirement—that the injury arises out of the relevant contacts—likely is not satisfied. *Felland* did not establish a firm test for making this determination. 682 F.3d at 676–77. *Felland* described three possibilities: "the circuits disagree about whether the defendant's contacts

must have been the factual cause of the plaintiff's injury, the factual and proximate cause, or perhaps some intermediate standard between the two." *Id.* at 676 (citing *Tamburo*, 601 F.3d at 708–09; *Dudnikov*, 514 F.3d at 1078). Under any formulation, it cannot be said that Medgas' injury arises out of the parties' limited communications. Certainly, this is not a case like *Felland*, in which the communications at issue formed the basis for the claim. 682 F.3d at 677. Finally, while perhaps in some broad sense the formation of the contract "caused" Medgas' injuries, the Seventh Circuit has "suggested in passing that a mere 'but for' causal relationship is insufficient to establish the required nexus between a defendant's contacts and the underlying cause of action," though it has not definitively resolved the question. *Id.* at 676–77 (citing *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1025 (7th Cir. 2009); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322 (3d Cir. 2007); *Tamburo*, 601 F.3d at 709). At most, Medgas has alleged "but for" causation (Docket #26 at 8), which does not seem to satisfy *Felland*'s arising-from requirement, *Felland*, 682 F.3d at 676–77.

2.3     Traditional Notions of Fair Play and Substantial Justice

The third *Felland* requirement—that the Court's exercise of jurisdiction comport with traditional notions of fair play and substantial justice—also is not satisfied. Multiple factors are relevant to "this determination: 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Felland*, 682 F.3d at 677 (quoting *Burger King*, 471 U.S. at 477). In this case, the defendants' relation to Wisconsin is extremely limited. Meanwhile, the subject of the contract and

a majority of the work occurred in Illinois. And, for that reason, many of the potential witnesses are likely located in Illinois (with the exception, of course, of Medgas' own witnesses). Given the much more significant relation to Illinois, it seems clear that the case can be resolved most efficiently in Illinois. Illinois courts also would have a stronger interest in adjudicating the case, as the substantive work in question was performed in Illinois. And, on balance, Wisconsin has a much lower interest in adjudicating the dispute. For all of these reasons, the Court finds that the third *Felland* requirement weighs against exercise of specific jurisdiction over the defendants.

3. CONCLUSION

The Court having found that each of the *Felland* requirements weighs against exercise of personal jurisdiction, the Court will grant the defendants' motion (Docket #22), vacating the Court's previous entry of default judgment and dismissing this action without prejudice for lack of personal jurisdiction. The defendants did not request transfer of venue (Docket #22), but, even if they had, the Court would not transfer this case. In this case, dismissal without prejudice is the wisest approach. One of the disputes between the parties revolves around a condition precedent to suit: mediation. The dismissal of the suit will allow the parties to consider reaching an agreement regarding this issue without a pending case hanging over their discussions. If they agree that the condition precedent is, indeed, required and has not been satisfied, then they can immediately engage in mediation, after which they can file a suit if necessary. (Whereas, if the Court transferred jurisdiction, the question would require resolution by the new court, which would potentially have to stay or dismiss the case, itself.) If the parties cannot agree, then Medgas can simply refile the case in the proper venue, whereafter the parties can engage in their dispute regarding the condition precedent.

The Court's approach—essentially wiping the slate clean—should protect Medgas' ability to seek relief while simultaneously reducing confusion for the parties and courts involved.

Accordingly,

IT IS ORDERED that the defendants' motion to vacate the default judgment and dismiss the case for lack of personal jurisdiction (Docket #22) be and the same is hereby GRANTED. Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and the Court's lack of personal jurisdiction over the defendants, the Court's previous order granting default judgment (Docket #18) and entry of default judgment (Docket #19) be and the same are hereby VACATED, and this matter be and the same is hereby DISMISSED without prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of April, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge